| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**Virginia and Ambinder, LLP**<br>Maura Moosnick, Esq.<br>40 Broad Street, 7th Floor<br>New York, New York 10004<br>(212) 943-9080<br>mmoosnick@vandallp.com<br>*Attorneys for Plaintiffs* | |
| In re:<br><br>SASHA RICHARD KISSOONDATH,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 25-11426-JNP |
| TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY RETIREE WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY VACATION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY SUPPLEMENTAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY PROMOTIONAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY TRAINING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY BUILDING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY DEFENSE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY LOCAL POLITICAL ACTION COMMITTEE, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, THE INTERNATIONAL MASONRY INSTITUTE, AND THE TRUSTEES OF THE BRICKLAYERS AND ALLIED CRAFTWORKERS POLITICAL ACTION COMMITTEE,<br><br>                    Plaintiffs,<br><br>   v.<br><br>SASHA RICHARD KISSOONDATH,<br><br>                    Defendant. | Adversary No. _____ |

**ADVERSARY COMPLAINT TO DETERMINE**
**THAT SPECIFIED DEBTS ARE NONDISCHARGEABLE**

Plaintiffs The Local 7 Tile Benefit Funds ("Plaintiffs" or "Benefit Funds")[1], by and through the undersigned counsel, as and for their Adversary Complaint against Defendant Sasha Richard Kissoondath ("Kissoondath"), respectfully allege as follows:

**PRELIMINARY STATEMENT**

1. This is an action under section 523(c) of the Bankruptcy Code, 11 U.S.C. § 523(c), to determine that a specified debt is nondischargeable on the ground that the Debtor committed "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," within the meaning of sections 523(a) (2), (4) and (6) of the Bankruptcy Code, 11 U.S.C. §§ 523(a)(2), (4) and (6).

2. Defendant is the managing member of Kimo Tile @ Marble, Limited Liability Company d/b/a Kimo Tile Company, LLC ("Kimo"), which is an installer of ceramic tile and marble on mostly public projects in the State of New Jersey and the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 29 U.S.C. §§ 1132(e)(1) and (f). This adversary proceeding relates to the Debtor's above-captioned case under Chapter 11 of the Bankruptcy Code, which is pending in the

---

[1] Consisting of: Trustees of the Local 7 Tile Industry Welfare Fund; Trustees of the Local 7 Tile Industry Annuity Fund; Trustees of the Tile Layers Local Union 52 Pension Fund; Trustees of the Local 7 Tile Industry Retiree Welfare Fund; Trustees of the Local 7 Tile Industry Vacation Fund; Trustees of the Local 7 Tile Industry Supplemental Fund; Trustees of the Local 7 Tile Industry Promotional Fund; Trustees of the Local 7 Tile Industry Training Fund; Trustees of the Local 7 Tile Industry Building Fund; Trustees of the Local 7 Tile Industry Defense Fund; Trustees of the Local 7 Tile Industry Local Political Action Committee; Trustees of the Bricklayers & Trowel Trades International Pension Fund; The International Masonry Institute; and the Trustees of the Bricklayers and Allied Craftworkers Political Action Committee.

2

United States Bankruptcy Court District of New Jersey. Plaintiffs consent to the entry of a final order or judgment by the Bankruptcy Court.

4. This is a core proceeding as designated by 28 U.S.C. § 157(b).

5. This is an action brought pursuant to the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 523.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), 1408, and 1409(a), and 29 U.S.C. § 1132(e)(2).

**PARTIES**

7. Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Local 7 Benefit Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Local 7 Benefit Funds are also multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3). The Trustees of the Local 7 Benefit Funds are fiduciaries of the Local 7 Benefit Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Local 7 Benefit Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

8. Plaintiffs Trustees of the Local 7 Tile Industry Retiree Welfare Fund, Local 7 Tile Industry Vacation Fund, Local 7 Tile Industry Supplemental Fund, Local 7 Tile Industry Promotional Fund, Local 7 Tile Industry Training Fund, Local 7 Tile Industry Building Fund, Local 7 Tile Industry Defense Fund, and Local 7 Tile Industry Local Political Action Committee, (collectively, the "Local 7 LMRA Funds," together with the Local 7 Benefit Funds, hereinafter

3

referred to as the "Local Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with sections 302(c)(4) and 302(c)(6)-(9) of the LMRA, 29 U.S.C. § 186(c)(4), (6)-(9).  The Local LMRA Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

9. Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "IPF") is a multiemployer labor-management trust fund organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  The IPF is a multiemployer employee benefit plan within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37).  The Trustees of the IPF are fiduciaries of the IPF within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).  The IPF maintains its principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

10. Plaintiffs International Masonry Institute ("IMI") and Trustees of the Bricklayers and Allied Craftworkers Political Action Committee ("BAC PAC," together with IMI, hereinafter referred to as the "International LMRA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with sections 302(c)(4) and 302(c)(6)-(9) of the LMRA, 29 U.S.C. § 186(c)(4), (6)-(9).  The International LMRA Funds maintain their principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

11. Defendant Sasha Kissoondath has at all relevant times been the President, owner, and a controlling official of non-party Kimo, was and is an employer within the meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and was and is an employer in

4

an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Kissoondath resides at 7 Fowler Avenue, Millville, NJ 08332.

## ALLEGATIONS

*The Parties' Relationships and Defendant's Obligations to the Benefit Funds*

12. This is an adversary proceeding by the Benefit Funds in which they seek a determination under 11 U.S.C. §§ 523(a)(2) and (4) as to the dischargeability of certain debts owed by Defendant.

13. As of the date of this Adversary Complaint, the Defendant has not been granted a discharge.

14. Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements between the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union").

15. The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the Taft-Hartley Act, 29 U.S.C. § 142.

16. Kimo is, and at relevant times was, a corporation organized under the laws of the State of New Jersey. At relevant times, Kimo was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

17. At all relevant times, Kimo was bound to a collective bargaining agreement ("CBA") with the Union.

18. The CBA further bound Kimo to the documents, policies and regulations adopted by the Funds' Trustees, including the Collection Policy.

19. The CBA and Collection Policy required Kimo to make specified hourly contributions ("Employer Contributions") to the Local Funds and the International LMRA Funds, and various entities on whose behalf they act as collection agents, as third-party beneficiaries of the CBA, in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work") and to remit such Employer Contributions accompanied by reports no later than the 15th day of the month following the month in which the hours were worked.

20. The CBA also required Kimo to furnish to the Benefit Funds, or their representatives, its books and records available to allow the Benefit Funds to verify the number of hours worked of Covered Work performed by Kimo's covered employees and whether Kimo properly fulfilled its obligation under the CBA to remit Employer Contributions to the Benefit Funds for those hours of Covered Work.

21. In the event that an employer bound by the CBA, like Kimo, is delinquent in its Employer Contributions to the Benefit Funds, then, pursuant to the CBA and the Collection Policy, the Benefit Funds are entitled to payment of the unpaid Employer Contributions, interest on Employer Contributions owed at a rate of 9% *per annum*, liquidated damages equal to 100% of the unpaid Employer Contributions, the Benefit Funds' audit costs, and the Funds' attorneys' fees and costs incurred in obtaining these amounts from the employer.

22. In addition, the CBA further provides that if an employer fails to timely remit Employer Contributions, the Benefit Funds may assess late payment interest against the employer from the date of the delinquency through the time of payment.

6

23. The Benefit Funds' operative Trust Agreements provide in relevant part that "The assets of this Trust Fund consist of… the sums of money that have been or will be paid or which are due and owing to the Fund by the Employers as required by the Collective Bargaining Agreements."

24. Accordingly, the Benefit Funds' assets include unpaid monies (including Employer Contributions) which are due and owing to the Benefit Funds.

25. As the managing member of Kimo and the only person at Kimo with authority to authorize payment of wages and benefits, Defendant exercised dominion and control over all aspects of Kimo's operations, including whether or not to comply with Kimo's obligations to the Benefit Funds or to pay Employer Contributions and other monies due and owing to the Benefit Funds.

26. Defendant exercised control over the Benefit Funds' assets (namely, "the sums of money that have been or will be paid or which are due and owing to the Fund… as required by the Collective Bargaining Agreements") and is therefore a fiduciary of the Benefit Funds.

***Fraudulent Conduct Perpetrated by Defendant***

27. In July 2023, the Union advised the Benefit Funds that several Union members had informed it that they performed Covered Work ostensibly for Kimo for which they were paid by personal checks issued by Defendant.

28. The Funds determined that Kimo did not report the hours to the Benefit Funds or remit benefit contributions to the Benefit Funds for them.

29. The purpose of this failure to report or to pay Union members via reported payroll was to avoid Kimo's obligations to the Benefit Funds by paying employees "off the books" through Defendant's personal bank account, thereby hiding the hours from the Funds.

30. As a result, Defendant intentionally deprived the Benefit Funds of the Employer Contributions due and owing to the Benefit Funds arising from the work that these Union members performed, and intentionally misappropriated the Benefit Funds' assets.

31. Kimo, and Defendant as the managing member of Kimo and sole person with authority to authorize reporting and payment, failed to remit contributions to the Benefit Funds for Covered Work performed by Kimo employees, but not reported by Kimo.

32. Defendant routinely required Kimo's covered employees to work hours "off the books" where Kimo did not report those hours and did not remit Employer Contributions to the Funds for those hours of Covered Work.

33. For example, from March 2023 through July 2023, at least two Kimo employees performed Covered Work at a New Jersey Department of Transportation site located in Ewing, New Jersey for which Defendant paid the members by personal check, and intentionally failed to report the hours to the Funds and to pay contributions.

34. Those same Kimo employees performed Covered Work at two Pinebelt Nissan locations in Keyport and Toms River, New Jersey and, similarly, Kimo did not report any hours of Covered Work to the Union, or remit required contributions to the Funds.

35. From approximately May through September, 2023, an additional Kimo employee worked "off the books" at a job located in Batch River, New Jersey, and at least two public schools located in New Jersey, Lakewood School and Erving School. This member was paid with checks from Defendant's personal checking account and Kimo's non-payroll account, none of which deducted payroll taxes. Kimo did not remit required contributions to the Funds for these hours.

36. This particular Union member was forced to pay for health insurance out of pocket from May 2023 to present because Defendant underreported the amount of hours worked by this

employee to the Funds each month, causing him to fail to meet the threshold for coverage, even though this employee worked sufficient hours for Kimo to attain eligibility.

37. The Union member referenced in the above paragraph could not have even offered informed consent to this illegal arrangement, because he did not speak English.

38. When another Union member complained that their "off the books" payroll checks failed to clear, Defendant spread false rumors that that Union member was a drug addict.

39. Defendant submitted false reports to the Benefit Funds by omitting certain Kimo employees and hours worked "off the books" and with Defendant's personal checking account and reporting underreported amount of hours worked by Kimo Employees.

40. The Benefit Funds have suffered extensive and irreparable harm as a direct result of Defendant hiring and compensating Union members "off the books" and intentionally not paying contributions for the hours they worked.

41. A subsequent audit of Defendant, performed after the Funds commenced an action in Federal District Court, revealed over $1.7 million in "off the books" payments made by Defendant via personal check, cash, Zelle, CashApp, and Venmo in order to circumvent Kimo's and Defendant's obligations to the Benefit Funds.

*The District Court Action and Affidavits of Confession of Judgment*

42. In October 2023, the Benefit Funds and Kimo entered into a settlement in the amount of $803,728.97 relating to an audit covering 2014-2017 and the Debtor's self-reported post-audit delinquencies. Defendant, as principal of Kimo, executed the settlement agreement. Pursuant to the settlement, Kimo was to immediately pay $50,000, the Benefit Funds would receive $117,836.19 via joint checks, and Kimo was to pay the balance in equal monthly

installment amounts over nine years. Defendant furnished a personal confession of judgment securing the settlement.

43. Kimo stayed current on the settlement until August 2024, when it failed to pay newly accruing contribution obligations. This continued into September 2024 and Kimo failed to pay the September 2024 monthly installment.

44. In September 2024, counsel for the Benefit Funds initiated enforcement of the corporate and personal confessions of judgment securing the settlement.[2]

45. On October 9, 2024, Kimo filed for Chapter 11 bankruptcy.

46. On December 20, 2024, the New Jersey Superior Court issued an order to enter judgment against Defendant in the amount of $658,683.18 and was subsequently entered as a statewide judgment lien on January 23, 2025.

47. In a separate action styled *Trustees of the Local 7 Tile Industry Fund, et al., v. Kimo Tile @ Marble, Limited Liability Company d/b/a Kimo Tile Company, LLC, et al.*, Case No. 23-cv-7377 (HG) (LKE) (the "District Court Action"), brought in September 2023, the Benefit Funds had brought claims against Kimo pursuant to the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. § 1145, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, for failure to make benefit fund contributions as required by the Debtor's collective bargaining agreement.

48. The Benefit Funds brought an additional claim against Defendant in connection with allegations that Defendant defrauded the Benefit Funds.

49. In the District Court Action, Kimo failed to furnish records, compelling the Benefit Funds to issue third-party subpoenas. Using documents obtained in response to lawful subpoenas

---

[2] N.J. Superior Court Law Division – Cumberland County Case No. CUM-L-000545-24 and
N.J. Superior Court Law Division – Cumberland County Case No. CUM-L-000544-24

issued to TD Bank and Paychex, to which neither Kimo nor Defendant objected, Benefit Funds' auditors finalized an audit of Kimo covering the period October 1, 2017 through December 31, 2023.

50. The Funds were also required to issue subpoenas to general contractors, to which neither Kimo nor Defendant objected, in an effort to confirm the nature and location of work performed, because Kimo and Defendant failed or refused to maintain or produce such records.

51. The auditors also examined Defendant's personal accounts, using bank records obtained by lawful subpoenas to TD Bank to which Defendant did not object, for the period October 1, 2017 through May 25, 2024.

52. The audits of Kimo and Defendant were finalized and issued on September 30, 2024.

53. The audit of Kimo's official records revealed a principal deficiency of $460,629.70 due in Employer Contributions to the Benefit Funds, plus interest, liquidated damages, and audit costs.

54. The audit of Defendant's personal accounts, based upon payments made directly to Union members via cash, personal check, Zelle, CashApp, and Venmo, revealed a principal deficiency of $1,415,020.95 due in Employer Contributions to the Benefit Funds, plus interest, liquidated damages, and audit costs.

*Kimo's Chapter 11 Bankruptcy*

55. On October 9, 2024, Kimo filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Kimo Bankruptcy Proceeding"). By filing for Chapter 11, Kimo automatically stayed the Benefit Funds' District Court Action and attempts to enforce the corporate confession of judgment executed by Kimo to secure the 2023 settlement.

56. Kimo attempted to extend the automatic bankruptcy stay to Defendant, but the Court in that case rejected its application to do so by order dated November 21, 2024.

57. The Benefit Funds attempted to proceed with discovery in the District Court Action but were thwarted by Defendant's intentional failure to cull and produce text messages in an accessible format, despite numerous District Court orders to do so.

58. Defendant intentionally delayed scheduling a deposition in the District Court Action.

59. Defendant filed for Chapter 11 bankruptcy protection at approximately 7:30am on February 12, 2025, two hours before his deposition was supposed to start in the District Court Action.

60. Upon information and belief, this was in material part to prevent the Benefit Funds from being able to depose Defendant under oath and to prevent Defendant from having to engage in further discovery which could reveal fraudulent acts.

61. Upon further information and belief, a "deadline" to file for Chapter 11 relief (which was referenced by Defendant's counsel in the meeting of creditors) was actually the starting time of Defendant's deposition in the District Court Action, as there were no statutory or other ascertainable "deadlines" for Defendant's filing for Chapter 11 relief.

62. Since Kimo's Chapter 11 filing, and since Defendant's own Chapter 11 filing, Defendant has continued to fail to ensure the prompt payment of post-petition contributions to the Benefit Funds as required by the contract that Defendant signed on behalf of Kimo.

63. 11 U.S.C. § 523(a)(2)(A) and (B) provide that an individual debtor is not entitled to a discharge of any debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses or representation, actual fraud or by using a statement in

writing that is materially false on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied and that the debtor caused to be made with the intent to deceive the creditor.

64. 11 U.S.C. § 523(a)(4) provides that an individual debtor is not provided a discharge from any debt incurred through fraud or defalcation while acting in a fiduciary capacity.

65. 11 U.S.C. § 523(a)(6) provides that an individual debtor is not provided a discharge from any debt incurred through willful and malicious injury.

66. Defendant's willful and malicious failure and refusal to make timely fringe benefit contributions pursuant to the CBA, and Defendant's intentional hiding of hours worked by Union members, and Defendant's false portrayal of himself as a fiduciary and businessperson who was both able and willing to comply with obligations to the Benefit Funds under the CBA, Defendant's defrauding of the Benefit Funds, Defendant's defalcation of Benefit Funds' trust assets as a fiduciary and Defendant's breach of his fiduciary duty to the Benefit Fund, are all grounds for a finding that of Defendants' debts to the Benefit Funds are nondischargeable under the Bankruptcy Code.

**FIRST CLAIM FOR RELIEF**
*(Debt is Not Dischargeable Under 11 U.S.C. § 523(a)(2))*

67. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68. Upon information and belief, at the time of Defendant's required obligations under the CBA and Collection Policy and the federal and state laws governing employee benefit and wage obligations, Defendant did not intend to meet those obligations. Defendant falsely made and adopted the representations contained in the CBA and Collection Policy and deceitfully represented to the Benefit Funds and others that he intended to abide by their terms.

13

69. Defendant understood that he was obligated to report to the Benefit Funds hours worked and to make corresponding contributions to the Benefit Funds. Defendant held himself out to be complying with these obligations despite knowledge that he was unable and/or unwilling to contribute to the Benefit Funds in the manner required by the CBA.

70. Defendant acted with false pretenses by portraying himself as performing his duties under the CBA and Collection Policy, and federal and state laws governing employee benefit and wage obligations. After executing the CBA and specifically taking up performance under the agreement, Defendant had the purpose and intention of deceiving the Benefit Funds by failing to make Employer Contributions, by hiring employees "off the books," and by paying covered employees and Union members from his personal accounts and via unreported channels to evade paying Employer Contributions.

71. Defendant continued to employ covered workers knowing that he was unable or unwilling to meet his benefit and wage obligations, thereby purporting himself as financially capable of hiring and employing laborers covered by the CBA and inciting reasonable reliance by the covered workers, the Union and the Benefit Funds on his financial ability to pay.

72. Defendant knowingly submitted false and fraudulent hourly reports to the Benefit Funds, to the Benefit Funds' detriment.

73. Plaintiffs relied, to their detriment, on Defendant's false and fraudulent representations made by word and deed, particularly Defendant's exhibition of falsely portraying himself as abiding by the CBA and making the required Employer Contributions. In fact, Defendant did not intend to abide by his agreements, while pretending that he did so intend. As a result, the Benefit Funds suffered losses in amount of at least $3,231,640.34 based upon unreported and/or unfunded hours which remained unreported and/or unfunded at Defendant's sole direction.

## SECOND CLAIM FOR RELIEF
*(Debt is Not Dischargeable Under 11 U.S.C. § 523(a)(4))*

74. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

75. As the principal of Kimo, Defendant had the authority to make decisions as to what obligations and/or payments of Kimo were to be paid and which ones were not to be paid, including the authority to make payments for his own personal benefit.

76. As the time that Employer Contributions and any other amounts due under the CBA, Collection Policy, and/or Trust Agreements became due and payable by Kimo to the Benefit Funds, such monies became assets of the Funds (the "Trust Assets").

77. The title of the unpaid contributions owed to the Benefit Funds were vested Trust Assets of the Benefit Funds from the time they were due and owing, pursuant to the Trust Agreements.

78. By exercising control respecting the disposition of Trust Assets, Defendant operated as a "fiduciary" under ERISA § 3(21), 29 U.S.C. § 1002(21) ("[A] person is a fiduciary with respect to a plan to the extent he exercises. . . any authority or control respecting management or disposition of assets…").

79. Defendant, in accepting the terms and conditions of the CBA and Collection Policy on behalf of Kimo, further assumed a fiduciary duty to pay over Trust Assets to the Benefit Funds.

80. Defendant exercised discretion in the management of the Trust Assets and exercised authority and control over the Trust Assets and intentionally used the Trust Assets in violation of the Trust Agreement.

81. Defendant breached his fiduciary duty to the Benefit Funds by intentionally failing and/or refusing to pay to the Benefit Funds all Employer Contributions and associated amounts

due to the Benefit Funds, all of which are Trust Assets, once they became due and payable and, therefore, is liable for all unpaid contributions, associated interest, liquidated damages, attorneys' fees and costs owed to the Benefit Funds.

82. Defendant misappropriated the Trust Assets held by him in his fiduciary capacity that were for the benefit of the Benefit Funds by failing to remit the same to the Benefit Funds in accordance with the terms of the CBA and Collection Policy.

83. Plaintiffs' claims are not dischargeable under 11 U.S.C. § 523 (a)(4) because Defendant was responsible for the defalcation of the Benefit Funds' Trust Assets while acting in a fiduciary capacity.

### THIRD CLAIM FOR RELIEF
*(Debt is Not Dischargeable Under 11 U.S.C. § 523(a)(6))*

84. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

85. Upon information and belief, in committing the wrongful acts and course of conduct alleged above, Defendant had a subjective motive to inflict injury, or was substantially certain that injury would occur, to the Benefit Funds, or to the contributions belonging to the covered employees and the Benefit Funds, as a result of his conduct.

86. Defendant intentionally failed to pay contributions for an extended period of time with no excuse or justification, knowing that his conduct would necessarily cause injury. Defendant is not an honest but unfortunate debtor and does not deserve to be discharged of his debt to Plaintiffs.

87. Defendant knowingly failed and refused to pay Employer Contributions and instead hired the covered employees "off the books" or paid them through his personal checking account to not have to pay contributions due and owing to the Benefit Funds. Instead of paying fully for

16

his covered employees as required by the CBA, Defendant chose to use his business earnings for other purposes and for personal gain.

88. As set forth more fully above, Defendant required Union members to violate the CBA and Union Constitution and By-Laws in order to work for him, and required Union members to accept "off the books" payments in order to work for him, and exploited Union members in doing so and retaliated against Union members who complained, all in order to ensure he could avoid his and Kimo's obligations to the Benefit Funds

89. By this conduct, and to the extent of it, Defendant inflicted willful and malicious injury on the Benefit Funds knowing that his conduct would harm the Benefit Funds and others.

90. Defendant willfully and maliciously converted Trust Assets of the Benefit Funds to the detriment of the Benefit Funds.

91. Defendant's intentional withholding of Employer Contributions and conversion of Trust Assets amounts to tortious conduct and violates a fundamental public policy and public interest in the state of New Jersey.

92. Defendant's willful and malicious conduct as set forth above, which resulted in the debts owed to the Benefit Funds by Defendant and Kimo, constitutes a willful and malicious injury under 11 U.S.C. § 523(a)(6) and renders those debts nondischargeable.

## REQUEST FOR RELIEF

Plaintiffs request the following relief:

1. For a determination and order that Defendant's debts to Plaintiffs are non-dischargeable under 11 U.S.C. Sections 523(a)(2), (4) and (6).

2. For a determination and order that all debts owed to Plaintiffs by Defendant and/or Kimo which constitute Trust Assets which Defendant controlled and wrongfully converted are non-dischargeable under 11 U.S.C. Sections 523(a)(2), (4) and (6).

3. Plaintiffs' reasonable attorneys' fees and costs incurred in this action; and

4. For all other relief as this Court deems just and proper.

Dated: New York, New York
May 9, 2025

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: */s/ Maura Moosnick*
Maura Moosnick, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080

mmoosnick@vandallp.com

*Attorneys for Plaintiffs*